## No. 9439.

PLAINS IRON WORKS COMPANY, ET AL. *v.* HAGGOTT.

1. EMBRYO CORPORATION—*Liability on Contracts of Those Promoting Its Organization.* An agreement among those proposing the organization of a corporation, as to commissions to be paid to parties who assist in the project is not binding upon such corporation, when organized, unless it expressly or impliedly assumes the liability.

The mere acceptance of property by the corporation paying therefor in full by the issue of its stock does not under the facts in this case warrant an inference of such assumption.

2. PARTIES—*Indispensable.* Corporate stock being held in trust for several beneficiaries the trustee was decreed to transfer to the plaintiff such number of the shares that the residue would not

suffice to supply all the beneficiaries, without determining which of the beneficiaries should bear the loss. Several of these beneficiaries were not parties to the suit. *Held* that the decree was erroneous unless the absentees were sufficiently represented.

3. JUDGMENT—*Inconsistent.* A judgment against several, the liability of one of whom exonerates the others, is error.

4. CONTRACT—*Consideration.* An agreement upon past consideration is *nudum pactum.*

5. EVIDENCE—*Parol,* may vary a receipt.

6. PLEADING—*Want of Consideration,* need not be pleaded.

*Error to Denver District Court, Hon. H. P. Burke, Judge.*

*En Banc.*

Mr. WILLIAM H. GABBERT and Mr. CHARLES C. BARKER, for plaintiffs in error.

Mr. E. M. SABIN and Mr. GREELEY W. WHITFORD, for defendant in error.

Mr. Justice Denison delivered the opinion of the court.

THE defendant in error brought suit below against the Plains Iron Works Company and others to recover $10,000 in money and to enforce specific performance of an agreement to give him 250 shares of stock in said company, all as a "commission" or compensation for services. The suit was also upon two claims, assigned to him by one Hallman and one Gaiser, for 25 shares each of said stock, for services alleged to have been rendered by them. The decree required the defendant company to pay the $10,000 with interest and required defendant Hubbell to transfer to plaintiff 299 shares of the stock on the three claims. The court found generally the truth of the complaint and made specific findings. Defendants bring error.

The defendant McConney had an option on the property of the F. M. Davis Iron Works, insolvent, in the hands of a receiver, and the complaint alleges that "it was agreed between the said McConney and the said Haggott, that

should the plaintiff undertake to interest parties with sufficient capital to organize a corporation with a capitalization of $250,000 to take over the property of the said F. M. Davis Iron Works Company at the purchase price of $85,000, that he, the said plaintiff, should receive as consideration therefor ten per cent of the capital stock of said corporation so organized, and $10,000 in cash to be paid by the persons capitalizing said corporation, or the said persons so capitalizing said corporation were to cause said corporation to adopt and ratify said agreement, and if said agreement should be adopted and assumed by said corporation, then said persons were no longer to be personally liable therefor; and it was also agreed that the said McConney was likewise to receive the same compensation and the same amount of stock and to be paid in the same manner as the plaintiff." "It was also agreed that upon the payment of the purchase price of $85,000 for the property of the said The F. M. Davis Iron Works Company by the persons to be procured to furnish the funds and to undertake the enterprise, all of said property should be transferred to said The Plains Iron Works Company, which was the corporation proposed to be organized for the purpose of taking over said The F. M. Davis Iron Works Company property, in consideration of the whole of its capital stock of two hundred and fifty thousand dollars being issued therefor, for distribution as should be agreed upon, ten per cent of which stock should then be given to said Haggott and ten per cent thereof to said McConney for the considerations aforesaid."

We do not decide the question whether the transactions upon which this action is founded were such that plaintiff is not here with clean hands.

We shall treat the complaint as if the words "undertake to interest" read "succeed in inducing."

It is this contract between McConney and Haggott, as set up in the complaint, on which the judgment (as to Haggott's services) against the Plains Company is based. It was not in writing. Haggott procured one Tully, since de-

ceased, and defendants Hubbell and Lowe to provide money to take over the Iron Works for $85,000 and the payments were thus made according to the terms of the option. He relies on this as the performance of the consideration for the compensation or commission for which he sues. There is evidence that Hubbell, Tully and Lowe agreed that plaintiff should receive the $10,000 and stock according to his contract with McConney.

The defendant corporation was formed, pursuant, as plaintiff claims, to this agreement, the option was assigned, and March 21st, 1916, the Iron Works property was conveyed to it, and one share each issued to the five directors. June 19, 1917, shares were issued, 249 to McConney, held by Hubbell as trustee, and the remaining shares to Hubbell as trustee for various parties.

The complaint alleges that the Plains Company adopted and assumed the McConney-Haggott contract, but defendant's counsel contend that no adoption or assumption of the contract by the Company is shown by the evidence, and that therefore the judgment against it is erroneous.

No express assumption by the Plains Company is shown, but the plaintiff relies upon the familiar principle that when a contract is made by promoters or others, to be performed by a corporation not yet formed, such corporation, when formed, is bound by such contract, if, with knowledge, it accepts the benefits thereof; and claims that the defendant company, knowing all the facts, accepted the option and property and is therefore bound to carry out the contract.

There is here no contract purporting to be a contract between McConney and Haggott on the one side and the unborn corporation on the other, as in some cases, *e. g.*, *Bommer v. Am. Spiral Co.*, 81 N. Y. 468. Nor is there evidence of any agreement between Haggott and Tully, Lowe and Hubbell that the company should do anything or become liable on the contract between them and him; there is alleged simply an agreement that they would give him $10,000 and 250 shares of stock *or* cause the company to assume that obligation, in which case they should be exonerated.

The testimony is that it was agreed that Haggott "should receive" or it was "understood that he should have," etc. The sole reliance of plaintiff, then, for a judgment against the Plains Company must be on the implied assumption and that will not avail him.

If a corporation when formed accepts the benefits of a contract previously made in its name or for its benefit, under such circumstances as to make itself liable thereon, it becomes liable because the law implies the assumption of the burdens in consideration of the benefits. The principle is the same as that in the implied promise in assumpsit, the consideration having been accepted the promise is conclusively presumed, and need not be otherwise proved, because the conduct of defendant is inconsistent with any other supposition.

But what implication is there in the present case, in the acceptance by the company of the property or the option?

Tully, Lowe and Hubbell, by the terms of the contract, had their choice either to cause the company to assume the contract with Haggott, and so free themselves, or to continue to bear the liability themselves, in which case it is clear that the company was not to be liable. The acceptance by the company of the option and property was consistent with either alternative, assumption of liability by it or continuance of liability by the three promoters; therefore it gives rise to a presumption of neither.

Again: It seems impossible that the company should issue the ten per cent of the stock to Haggott under the terms of the arrangement set up in the complaint as quoted above, because it is provided there that all the stock should be issued for the purchase of the iron works and then be distributed to Haggott and the others.

The complaint alleges that the contract which is the basis of the suit provided that the stock should be issued by the company in payment for the property, and we must presume that this was done because no other consideration for its issue appears and because no consideration except its issue appears for the conveyance of the property to the

company, and because there is no evidence to the contrary. The stock was to be issued and subsequently distributed in accordance with the contract. It was so issued. If, therefore, there was such a contract, the company, on its part, has performed it according to its terms, so far as the stock is concerned, and so cannot be held liable thereon, and has no pecuniary interest in the decreed transfer of this stock from Hubbell to Haggott.

It follows from the foregoing that the specific finding of the court that there was an agreement between McConney and Haggott that the Plains Company should adopt the agreement for commissions was not in accordance with the pleadings and the finding that the assignment of the option to the Plains Company was "on the condition that the said company should pay the said Warren A. Haggott and the said R. B. McConney $10,000 each" and issue them stock, and the finding that 299 shares were at all times "held in trust by said Plains Company for the use and benefit of said" Haggott, Gaiser and Hallman are without evidence to support them and are not in accordance with the contract set up in the complaint.

If, however, Tully, Lowe and Hubbell, in consideration of the transfer of the option, agreed with Haggott that his contract with McConney should be carried out and 250 shares distributed to Haggott after the issue of the stock in payment for the property, then the provisions in the decree that the stock be transferred from Hubbell to Haggott would be correct but for the fact that, by the terms of the complaint, he and Tully and Lowe are exonerated and that the decree is insufficient in this, that it does not disclose who of Hubbell's *cestuis qui trustent* should bear the loss. The amount of their several interests does not appear. There are several of them who are not parties to this suit. The suit must fail without them unless they are sufficiently represented by their trustees. That, however, seems doubtful.

The decree in form renders a judgment in general terms against all the defendants for the cash commission with

interest and then proceeds to direct the corporation, the Plains Company, to pay this sum. It follows from what has been said above that this decree is erroneous. Under the evidence the Plains Company does not owe Haggott anything, so the judgment against it for the cash commission cannot be sustained, and, under the allegations of the complaint, Tully, Lowe and Hubbell are exonerated, so the judgment against them (if it was so intended) for the cash commission is impossible. We are not sure whether it was intended to give this judgment against defendants Lowe and Hubbell and also the Plains Company. If so that was error, because the liability of that company exonerates the others.

Haggott has given the heirs and estate of Tully a receipt in full. This receipt he said referred only to a certain transaction concerning stock therein mentioned, although in terms it is a receipt for all matters. Since the court found that the allegations of the fifth defense, in which accord and satisfaction and this receipt are set up, were not true, we suppose that the testimony of Mr. Haggott must have been taken as sufficient to vary the meaning of the receipt in his own handwriting. This might be done by the court, since a receipt has not the characteristic of a contract, which may not be varied by parol testimony. The same may be said of the accord and satisfaction with Hubbell, also stated in the fifth defense, the facts of which are similar except that there was no written receipt.

As to the claims of Hallman and Gaiser, assigned to Haggott, the evidence is that the agreement was made for services which they had rendered. The only evidence of any services performed by them is that they procured Tully and Lowe and sold or tried to sell stock in The Hydro-Carbon Products Company, called the Carbon Company. Upon the employment of Haggott by McConney to get somebody to capitalize the proposed corporation, he, Haggott, employed Hallman and Gaiser to help him and they procured Tully and Lowe and Tully and Lowe afterwards procured Hubbell. If we assume that Tully, Lowe and Hubbell

agreed to give Hallman and Gaiser $5,000 shares for this, we view the strange anomaly of an agreement by them to pay a broker for previously procuring themselves to furnish money to capitalize a corporation. This agreement was *nudum pactum*, because the consideration was past; and could not have been, in the nature of things, and was not, under the evidence, performed with any understanding on the part of Tully, Lowe and Hubbell that it was to be paid for by them. (9 Cyc. 358). The only other services that Hallman and Gaiser rendered were to sell and attempt to sell certain stock of the Carbon Company; and this was either for the purpose of raising money with which to buy sixty per cent of the Plains Company stock for $150,000, which, under the circumstances, would be a fraud on the Carbon Company, or else it had no connection whatever with the Plains Company or with the transaction in question in this suit, being upon an employment entered into before the purchase of the iron works was proposed, for a consideration then agreed on, to be paid by the Carbon Company or its promoters. In neither of these alternatives can the work of Hallman and Gaiser in selling the Carbon stock be made the basis of any claim against the Plains Company, nor against Tully, Lowe or Hubbell.

(Want of consideration is not pleaded, but need not be. *Alden v. Carpenter,* 7 Colo. 87, 92.)

The judgment should be reversed with leave to amend or re-plead and a new trial granted.

Allen, J. and Scott, J. dissent.

*Judgment Reversed.*

*On Motion for Rehearing.*

*En Banc.*

Denison, J.

We adhere to our former opinion though not to all the inferences that seem to have been drawn from it: It should be understood that we do not determine whether his *cestuis qui trustent* can be represented by Hubbell, and, if

not, we are unable to see how their rights can be saved
unless the debt of stock due Haggott, if any, can be satis-
fied out of what, if any, Hubbell may be shown to hold for
himself or Lowe, the beneficiaries who owe it, if any of
them do.